# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CATHY MICHELLE WILLIAMS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:20-cv-00734-ACA |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Cathy Michelle Williams appeals the Social Security Commissioner's (the "Commissioner") denial of her claim for a period of disability and disability insurance benefits. (Doc. 1). Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Williams filed for disability insurance benefits on May 15, 2014, with an alleged disability onset date of March 21, 2013. (R. 1262). The Social Security Administration initially denied Ms. Williams' claim (R. 106–110) and, after a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision. (R.

20–43, 72–95). The Appeals Council denied Ms. Williams' request for review and Ms. Williams then filed a complaint before the district court. (R. 1362). The court remanded the case for further administrative proceedings. (R. 1373–74). On remand, the ALJ denied benefits for a second time. (R. 1259–96, 1321–40). Ms. Williams then requested review of the decision and the Appeals Council denied review. (R. 1–4). The Appeals Council's denial of review makes the Commissioner's decision final and ripe for review. *See* 42 U.S.C § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings."

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991). The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ's decision must be affirmed where it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Baker o/b/o Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

3

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ found that Ms. Williams had not engaged in substantial gainful activity during the period from her alleged onset date of March 21, 2013, through her date last insured of December 31, 2013. (R. 1266). The ALJ found that Ms. Williams' OCD, panic disorder with agoraphobia, major depressive disorder, peripheral neuropathy, hypertension, status post right shoulder arthroscopic surgery and rotator cuff repair, and left shoulder impingement are severe impairments. (R. 1266–67). However, the ALJ concluded that Ms. Williams does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Subpart 404, Appendix 1. (R. 1267–73).

After considering the evidence of record, the ALJ determined that Ms. Williams had the residual functional capacity to perform a reduced range of medium work. (R. 1273–84). Based on this residual functional capacity and the testimony of vocational experts, the ALJ found that Ms. Williams could perform her past relevant work as a machine welding feeder or, in the alternative, other jobs that exist in significant numbers in the national economy such as laundry laborer, laundry checker, and warehouse stocker. (R. 1285–86). Accordingly, the ALJ found that Ms. Williams was not under a disability as defined by the Social Security Act from the alleged onset date through December 31, 2013, the date last insured. (R. 1287).

## IV.  DISCUSSION

Ms. Williams asks the court to reverse the Commissioner's decision because the ALJ did not accord the proper weight to the opinions of treating psychiatrist Dr. Marilyn Lachman and examining psychologist Dr. David Wilson.  (Doc. 11 at 2).  The court considers each argument in turn.

### 1.  The ALJ Properly Evaluated Dr. Lachman's Opinion

Ms. Williams first argues that the ALJ did not give proper weight to the opinion of her treating psychiatrist, Dr. Lachman.

An ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id*. at 1240–41.

Here, Dr. Lachman opined that Ms. Williams is "at the point where the risk of her functioning in the occupational setting far outweighs the benefits and her inability to work will have a duration of at least in the foreseeable future." (R. 1282).  An opinion on whether Ms. Williams can work is an administrative finding reserved

to the Commissioner and not a medical finding. 20 C.F.R. § 404.1527(d)(1). The ALJ thus properly disregarded that part of Dr. Lachman's opinion.

Dr. Lachman further opined that Ms. Williams can understand, remember, and carry out very short and simple instructions and adjust to routine and infrequent work changes, but is unable to maintain attention, concentration, and pace for at least two hour periods; perform activities within a schedule and be punctual within customary tolerances; sustain an ordinary routine without special supervision; adjust to routine and infrequent work changes; interact with supervisors or coworkers; or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. 1282–83). Dr. Lachman also noted that Ms. Williams would be off task 85% in an eight-hour workday and would miss twenty-five to thirty days of work in a thirty-day period. (*Id.*). In a later statement, Dr. Lachman opined that Ms. Williams was unsafe in the workplace and would miss more than twenty days of work a month with these findings dating back to September 2013. (*Id.*).

The ALJ gave little weight to this opinion, as it was not supported by or consistent with the evidence, and gave several reasons for this decision. (*Id.*). Specifically, the ALJ noted that progress notes showed Ms. Williams' psychotropic medication helped control her symptoms and there is no evidence in the record of follow up treatment with a mental health professional, including Dr. Lachman since December 2015. (R. 1282-83). In addition, the ALJ noted that these restrictions

were inconsistent with a letter provided by Dr. Lachman herself dated March 4, 2019, which indicated that Ms. Williams stated she was doing well on her "psych regimen" while under Dr. Lachman's care. (R. 1282, 1646). Also, as noted by the ALJ, Ms. Williams' daily activities undermined Dr. Lachman's opinion, as Ms. Williams stated that she was able to leave home and shop in stores, attend church three nights a week, sing in the church choir, and practice for choir every Wednesday after bible study. (R. 272–78, 1280). Moreover, Ms. Williams indicated that she could manage her personal care with some difficulties but without reminders or encouragement, prepare meals, change, read, watch television every day, spend time with others, attend church functions, finish what she started, follow written instructions, and get along with others. (*Id.*).

Ms. Williams suggests that in assigning less weight to Dr. Lachman's opinion, the ALJ substituted his opinion for that of Dr. Lachman. (Doc. 11 at 34). Ms. Williams is correct that an ALJ may not substitute his own opinion of a claimant's condition for that of a medical expert. *See Freeman v. Schweiker,* 681 F.2d 727, 731–32 (11th Cir. 1982). Ms. Williams does not, however, offer any specific argument as to how the ALJ did so in this case. Further, an ALJ may not make medical findings himself, *see Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992), but it is his responsibility to resolve conflicting medical opinions. *Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984*)*. Here, the ALJ did not

assume the role of a physician, but instead appropriately weighed the credibility of Dr. Lachman's opinion with other record evidence.

Next, Ms. Williams asserts that, "[t]he Commissioner argues that claimant's daily activities are inconsistent with Dr. Lachman's evaluation." (Doc. 13 at 10). Other than restating the Commissioner's position and citing two cases involving consideration of a claimant's daily activities when evaluating a treating physician's opinion and a claimant's testimony, Ms. Williams does not state an affirmative position or develop an argument. (*See* Doc. 13 at 10). However, to the extent that Ms. Williams' argues that an ALJ cannot use a claimant's daily activities to discount a treating physician's opinion, she is incorrect. 20 C.F.R. § 404.1529(c)(3)(i). Accordingly, it was proper for the ALJ to consider Ms. Williams' daily activities when evaluating Dr. Lachman's opinion.

Ms. Williams also argues that Dr. Lachman's opinion is supported by other evidence in the record. (Doc. 11 at 36). However, the court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). The ALJ established good cause for discounting Dr. Lachman's opinion by clearly articulating the reasons above, and the court will not disturb those findings.

### 2. The ALJ Properly Evaluated Dr. Wilson's Opinion

Ms. Williams next contends that the ALJ failed to give proper weight to the opinion of examining psychologist Dr. Wilson.

The opinion of a one-time examining physician like Dr. Wilson is not entitled to deference. *Crawford*, 363 F.3d at 1160 (the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). Further, the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

Here, Dr. Wilson opined that Ms. Williams had no ability to understand, remember, or carry out very short and simple instructions; maintain attention, concentration, and pace for at least two hours periods; perform activities within a schedule and be punctual within customary tolerance; sustain an ordinary routine without special supervision; adjust to routine and infrequent work changes; interact with supervisors and co-workers; or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. 1282). Dr. Wilson also opined that Ms. Williams would miss thirty days of work in a thirty-day period due to psychological symptoms and that Ms. Williams' limitations existed back to March 21, 2013. (*Id.*).

The ALJ assigned little weight to Dr. Wilson's opinion for several reasons. First, Ms. Williams' last mental health treatment records from December 2015 showed that she was doing well on her psychiatric medication regimen with no reported significant symptoms or limitations and that she was interacting with her family. (R. 1283). As stated above, Dr. Lachman's letter further indicated that Ms. Williams was doing well with her "psych regimen." (R. 1282). In addition, Ms. Williams' mental status examinations did not support the limitations described by Dr. Wilson. (R. 1283). Instead, they showed that Ms. Williams had unremarkable behavior, appropriate speech, intact memory, clear consciousness, average intellect, cooperative attitude, ability to gain and maintain attention, normal orientation, logical thought process, and unremarkable impulse control and judgment. (*Id.*). Lastly, Ms. Williams' daily activities, described above, were inconsistent with Dr. Wilson's opinion. (*Id.*).

Ms. Williams first argues that the ALJ incorrectly stated that Dr. Wilson reviewed only records from Quality of Life. (Doc. 11 at 37). But the ALJ correctly stated that "the claimant's treatment records from Quality of Life were the only treatment records Dr. Wilson reviewed *that covered as far back as March 2013.*" (R–1283) (emphasis added). Dr. Wilson himself stated that he reviewed records from several other providers covering 2014 to 2015, but the treatment records from

Quality of Life are the only ones listed that cover as far back as March 2013. (R. 1214). Thus, this argument is without merit.

Ms. Williams then argues that the ALJ substituted his own judgment for that of Dr. Wilson. (Doc. 11 at 39). Again, Ms. Williams cites several cases that correctly hold that an ALJ may not substitute his own opinion of a claimant's condition for that of a medical expert but makes no specific argument as to how the ALJ did so in this case. (*Id.*). The ALJ was required to consider Dr. Wilson's opinion and clarify his reasons for discounting it, and he did so. *See Winschel*, 631 F.3d at 1179. He was not required, however, to assign great weight to Dr. Wilson's opinion. *See Crawford*, 363 F.3d at 1160. The ALJ discussed Ms. Williams' medical history at length and, as with Dr. Lachman's opinion, concluded that Dr. Wilson's opinion was inconsistent with the record as a whole. (R. 1283). Accordingly, the court finds that the ALJ did not impermissibly substitute his opinion for that of Dr. Wilson in assigning Dr. Wilson's opinion little weight.

Finally, Ms. Williams argues that the court should adopt the "degree of suspicion" standard from the Seventh Circuit's decision in *Wilder v. Chater*, 64 F. 3d 335 (7th Cir. 1995), and find that the ALJ gave improper weight to Dr. Wilson's opinion. (Doc. 11 at 40). The Eleventh Circuit has not adopted this standard for reviewing the opinions of examining physicians. Further, as explained above, in this Circuit, opinions of one-time examiners "are not entitled to deference." *McSwain*,

814 F.2d at 619. Also, the Court has found *Wilder* distinguishable when the record contains multiple medical opinions about the relevant issue, *Arnold v. Soc. Sec. Admin. Comm'r*, 724 F. App'x 772, 779 n.3 (11th Cir. 2018), and the ALJ does not wholly reject a medical opinion but instead assigns it little weight. *Bush v. Soc. Sec. Admin., Comm'r*, 770 F. App'x 490–91 (11th Cir. 2019). Although some district courts within this Circuit have applied the "degree of suspicion" standard to facts indistinguishable from those in *Wilder*, *see, e.g.*, *Stone v. Saul,* Case No. 4:18-cv-1207-GMB, 2019 WL 4491509, at *7 (N.D. Ala. Sept. 18, 2019), those cases have only persuasive value and do not control. Further, in *Wilder*, the ALJ assigned no weight to the testimony of the only disinterested expert to discuss the claimant's mental health. *Wilder*, 64 F.3d at 337–38. Here, the record contains additional evidence and opinions of Ms. Williams' mental health and is thus clearly distinguishable. Accordingly, even if *Wilder* were controlling in this Circuit, it would not apply to the issues presented here and would not change the court's analysis.

## V.   CONCLUSION

For the reasons given above, the court concludes that the Commissioner's decision is supported by substantial evidence and the Commissioner applied proper legal standards in reaching the decision. As such, the court **AFFIRMS** the

Commissioner's final decision. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this May 26, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE